UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>BRIAN MOCK, )<br>)<br>Defendant. )<br>_____) | No. 21-cr-444 (JEB) |

**DEFENDANT'S MEMORANDUM IN AID OF RESENTENCING**

Defendant Brian Mock, through undersigned counsel, respectfully submits this Memorandum in Aid of Resentencing to supplement his memorandum originally submitted on January 12, 2024 (ECF:113). Mr. Mock reasserts the arguments and background provided in his January 2024 sentencing memo and adds the following developments in support of his request for an amended sentence of time served.

I. **Supplemental Procedural History**

On July 12, 2023, after a bench trial, Mr. Mock was found guilty of various offenses related to the events of January 6, 2021, including Obstruction of an Official Proceeding and Aiding and Abetting, 18 U.S.C. §§ 1512(c)(2) and 2. On February 22, 2024, this Court sentenced Mr. Mock to a total of 33 months' imprisonment to be followed by 24 months of supervised release.

Before sentencing, the government and defense filed sentencing memoranda raising numerous arguments — which Mr. Mock reasserts here and discusses further below — with respect to how his Sentencing Guidelines should be calculated. Acknowledging that "there are many disputes between the parties," the Court at sentencing concluded, "I'm not going to resolve them," reasoning "the sentence I would give here would be the same regardless of how I

resolved each of the guidelines disputes." (2/22/24:28-29.) The Court explained, *inter alia*:

> So, for example, I believe that the offense level is *at least 26 here*, using a base level of 14, *adding 8 for causing or threatening physical injury* in regard to Officers Collins and Carlson, plus 6 for victim-related adjustment of 28. Even if you reduced two levels for 4C1.1, which I doubt you should, and even if you added zero for substantial interference with the administration of justice and zero for the obstruction of justice, and added nothing for grouping, you would still be at level 26, which would be 63 to 78 months.

(2/22/24:29 (emphasis added).) Recognizing that the government thought the applicable range should be higher and Mr. Mock thought it should be lower, the Court asserted that the parties' remaining disputes were essentially immaterial and thus, seemingly anchored its sentencing analysis off of the 63-78 range, which appears to be the lowest calculation the Court was prepared to accept. Despite this range, after a lengthy allocution by Mr. Mock and thoughtful consideration by the Court, the Court chose a sentence of 33 months — a significant downward departure from what the Court perceived to be the lowest potentially applicable Guidelines range.

On March 1, 2024, Mr. Mock filed a timely notice of appeal. During the pendency of his appeal, on June 28, 2024, the Supreme Court decided *Fischer v. United States*, 144 S. Ct. 2176, 2190 (2024), holding that Section 1512(c)(2) requires proof that the defendant impaired or attempted to impair "the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding." After careful consideration of the Supreme Court's decision in *Fischer*, the government decided that it would not defend Mr. Mock's § 1512(c)(2) conviction on appeal nor would it pursue or otherwise defend that charge on remand. Therefore, the parties agreed that the Court of Appeals should vacate Mr. Mock's conviction and sentence on Count One for violating 18 U.S.C. § 1512(c)(2) and remand to this Court for further proceedings. On November 20, 2024, the D.C. Circuit vacated Mr. Mock's

2

§ 1512(c)(2) conviction and remanded to this Court, issuing its mandate the same day. Thereafter, pursuant to the Circuit's mandate, this Court scheduled an in-person resentencing hearing for December 19, 2024, at 11:30 a.m. On December 9, 2024, the Court granted Mr. Mock's motion to appear virtually from prison. Mr. Mock has been incarcerated since April 25, 2024.

## II. Resentencing Considerations

In *United States v. Blackson*, 709 F.3d 36 (D.C. Cir. 2013), the D.C. Circuit discussed the scope of a resentencing remand when a court of appeals vacates one count of a multi-count conviction. The court set forth three categories of inquiry:

> First, . . . when this court vacates one count of a multi-count conviction, the district court on remand should begin by determining whether that count affected the overall sentence and, if so, should reconsider the original sentence it imposed. . . . Second, . . . the district court may also consider such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result. . . . Third, the district court is further authorized to consider facts that did not exist at the time of the original sentencing: for example, in *United States v. Rhodes* we held that the district court could consider rehabilitation efforts that the defendant had undertaken since receiving his original sentence. 145 F.3d 1375, 1377–78 (D.C.Cir.1998)[.]

*Id.* (internal citations and quotation marks omitted). In accordance with *Blackson*, and in addition to the arguments made in Mr. Mock's original sentencing memorandum (which may be newly relevant in the absence of Mr. Mock's § 1512 conviction), Mr. Mock outlines below several legal and factual developments in support of his request for a sentence of time served.

### A. Legal Developments

In addition to *Fischer v. United States*, 144 S. Ct. 2176 (2024), the following legal developments are relevant to this Court's resentencing analysis:

#### 1. *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024)

Days after Mr. Mock's sentencing, the D.C. Circuit decided *United States v. Brock*, 94

3

F.4th 39, 51 (D.C. Cir. 2024), which held that the three-level Sentencing Guidelines enhancement for "substantial interference with the administration of justice," U.S.S.G. § 2J1.2(b)(2), "does not encompass Congress's role in the electoral certification process" and "does not extend to the unique congressional function of certifying electoral college votes." This holding also extends to the eight-level "administration of justice" enhancement found in § 2J1.2(b)(1)(B). The Circuit's holding in *Brock* is significant here, as in explaining why it believed Mr. Mock's total offense level was "at least 26," this Court made clear that the now-invalidated eight-level enhancement under § 2J1.2(b)(1)(B) had been part of its bottom-line analysis.[1] (*See* 2/22/24:29 ("I believe that the offense level is at least 26 here, using a base level of 14, *adding 8 for causing or threatening physical injury in regard to Officers Collins and Carlson*, plus 6 for victim-related adjustment of 28. Even if you reduced two levels for 4C1.1, which I doubt you should, and even if you added zero for substantial interference with the administration of justice and zero for the obstruction of justice, and added nothing for grouping, you would still be at level 26, which would be 63 to 78 months." (emphasis added)).) Without § 2J1.2(b)(1)(B)'s eight-level enhancement, the Court's analysis *as articulated* would start at a level 20 with a potential 2-level reduction under 4C1.1, resulting in a baseline range of 27-33 months. Thus, instead of imposing a sentence that was a significant downward departure from what it thought was the lowest potentially applicable range of 63-78 months, the Court actually imposed a sentence at the *high* end of the range that results from its stated analysis post *Fischer* and *Brock*. Thus, assuming the Court still believes that a downward variance is warranted, it must use a different Guidelines range to anchor its analysis at resentencing.

---

[1] Even without *Brock*, the vacatur of Mr. Mock's § 1512 conviction would erase § 2J1.2(b)(1)(B)'s eight-level enhancement because without § 1512, the § 2J1.2 guideline no longer applies.

4

### 2. *United States v. Sargent*, 103 F.4th 820 (D.C. Cir. 2024), and *United States v. Stevens*, 105 F.4th 473 (D.C. Cir. 2024)

In *Sargent* and *Stevens*, the D.C. Circuit held that the aggravated assault guideline, U.S.S.G. § 2A2.2, had been appropriately applied to the defendants' 18 U.S.C. § 111(a)(1) convictions resulting from conduct related to the events of January 6, 2021, as both defendants had also been convicted of committing civil disorder in violation of 18 U.S.C. § 231(a)(3). Like the defendants in *Sargent* and *Stevens*, Mr. Mock had argued at his original sentencing that the aggravated assault guideline should not apply and that this Court should instead use U.S.S.G. § 2A2.4, entitled "Obstructing or Impeding Officers." Though Mr. Mock maintains his prior position and preserves his argument here, he nevertheless acknowledges the Circuit's holdings in *Sargent* and *Stevens* and thus calculates his Sentencing Guidelines below pursuant to those holdings.

### 3. Sentencing Guidelines

#### i. Arguments

Mr. Mock reasserts all of the Guidelines-related arguments set forth in his original sentencing memorandum, including those related to any potential obstruction enhancement, the application of § 3A1.2's official victim enhancement, the application of the aggravated assault guideline (see above), and his zero-point offender status. (ECF:113 at 7-12) As Mr. Mock argued previously, even if this Court ultimately finds that certain guidelines/enhancements technically apply, consideration of a downward variance is appropriate here in light of the specific facts of this case, the Guidelines' intent and historical application, as well as any potential policy disagreements the Court may have.

ii. Calculations

a. Without Official Victim Enhancement

Without § 3A1.2's official victim enhancement, the Total Offense Level post-*Fischer* would be 18 and the resulting Guidelines range would be 27-33 months, assuming the application of the aggravated assault guideline (§ 2A2.2).

| Count | Charge | Guideline | Group | Calculation | Total | Highest of Group | Units |
|---|---|---|---|---|---|---|---|
| ~~Count 1~~ | ~~1512 (Congress)~~ | ~~2J1.2~~ | ~~1~~ | | ~~/~~ | ~~/~~ | ~~/~~ |
| Count 2 | Civil Disorder, 231(a)(3) (USCP West Plaza) | 2A2.4 | 2 | 10 (base OL) + 3 (physical contact) =13 | 13 | / | / |
| Count 3 | Assaulting Officers, 111(a)(1) (Officer Collins - contact (push/attempted kick)) | 2A2.2 | 3 | 14 (base OL) =14 | 14 | 14 | 1 |
| Count 4 | Assaulting Officers, 111(a)(1) (Officer S. Karlsen - contact (shove to ground)) | 2A2.2 | 4 | 14 (base OL) =14 | 14 | 14 | 1 |
| Count 5 | Assaulting Officers, 111(a)(1) (USCP West Plaza; contact (threw flag pole)) | 2A2.2 | 2 | 14 (base OL) =14 | 14 | 14 | 1 |
| Count 6 | Assaulting Officers, 111(a)(1) (Unidentified Officer - contact (shove)) | 2A2.2 | 5 | 14 (base OL) =14 | 14 | 14 | 1 |
| Count 7 | Theft of Gov't Prop. (Two USCP shields) | 2B1.1 | 6 | 6 (base OL) | 6 | 6 | 0.5 |
| Count 8 | Entering/Remaining Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | 6 | 0.5 |
| Count 9 | Disorderly Conduct Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 10 | Physical Violence Restricted BG (USCP West Plaza) | 2B2.3 | 2 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 11 | | Misd. | N/A | N/A | / | / | / |
| Total Units | | | | | | | 5 units |

6

### b. With Official Victim Enhancement

With § 3A1.2's 6-point official victim enhancement, the Total Offense Level would be 24 and the resulting Guidelines range would be 51-63 months, assuming the application of the aggravated assault guideline (§ 2A2.2).

| Count | Charge | Guideline | Group | Calculation | Total | Highest of Group | Units |
|---|---|---|---|---|---|---|---|
| ~~Count 1~~ | ~~1512 (Congress)~~ | ~~2J1.2~~ | ~~1~~ | ~~/~~ | ~~/~~ | ~~/~~ | ~~/~~ |
| Count 2 | Civil Disorder, 231(a)(3) (USCP West Plaza) | 2A2.4 | 2 | 10 (base OL) + 3 (physical contact) =13 | 13 | / | / |
| Count 3 | Assaulting Officers, 111(a)(1) (Officer Collins - contact (push/attempted kick)) | 2A2.2 | 3 | 14 (base OL) +6 (3A1.2(c)(1) official victim) =20 | 20 | 20 | 1 |
| Count 4 | Assaulting Officers, 111(a)(1) (Officer S. Karlsen - contact (shove to ground)) | 2A2.2 | 4 | 14 (base OL) +6 (3A1.2(c)(1) official victim) =20 | 20 | 20 | 1 |
| Count 5 | Assaulting Officers, 111(a)(1) (USCP West Plaza; contact (threw flag pole)) | 2A2.2 | 2 | 14 (base OL) +6 (3A1.2(c)(1) official victim) =20 | 20 | 20 | 1 |
| Count 6 | Assaulting Officers, 111(a)(1) (Unidentified Officer - contact (shove)) | 2A2.2 | 5 | 14 (base OL) +6 (3A1.2(c)(1) official victim) =20 | 20 | 20 | 1 |
| Count 7 | Theft of Gov't Prop. (Two USCP shields) | 2B1.1 | 6 | 6 (base OL) | 6 | 6 | 0 |
| Count 8 | Entering/Remaining Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | 6 | 0 |
| Count 9 | Disorderly Conduct Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 10 | Physical Violence Restricted BG (USCP West Plaza) | 2B2.3 | 2 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 11 | | Misd. | N/A | N/A | / | / | / |
| Total Units | | | | | | | 4 units |

### c. Employing U.S.S.G. § 2A2.4 Instead of the Aggravated Assault Guideline

Employing U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and without § 3A1.2's 6-point official victim enhancement (which becomes legally inapplicable, *see Stevens*, 105 F.4th at 475), the Total Offense Level would be 17 and the resulting Guidelines range would be 24-30 months.

| Count | Charge | Guideline | Group | Calculation | Total | Highest of Group | Units |
|---|---|---|---|---|---|---|---|
| ~~Count 1~~ | ~~1512 (Congress)~~ | ~~2J1.2~~ | ~~1~~ | / | / | / | / |
| Count 2 | Civil Disorder (USCP West Plaza) | 2A2.4 | 2 | 10 (base OL) + 3 (physical contact) =13 | 13 | 13 | 1 |
| Count 3 | Assaulting Officers, 111(a)(1) (Officer Collins - contact (push/attempted kick)) | 2A2.4 | 3 | 10 (base OL) + 3 (physical contact) =13 | 13 | 13 | 1 |
| Count 4 | Assaulting Officers, 111(a)(1) (Officer S. Karlsen - contact (shove to ground)) | 2A2.4 | 4 | 10 (base OL) + 3 (physical contact) =13 | 13 | 13 | 1 |
| Count 5 | Assaulting Officers, 111(a)(1) (USCP West Plaza; contact (threw flag pole)) | 2A2.4 | 2 | 10 (base OL) + 3 (physical contact) =13 | 13 | / | / |
| Count 6 | Assaulting Officers, 111(a)(1) (Unidentified Officer - contact (shove)) | 2A2.4 | 5 | 10 (base OL) + 3 (physical contact) =13 | 13 | 13 | 1 |
| Count 7 | Theft of Gov't Prop. (Two USCP shields) | 2B1.1 | 6 | 6 (base OL) | 6 | 6 | 0.5 |
| Count 8 | Entering/Remaining Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | 6 | 0.5 |
| Count 9 | Disorderly Conduct Restricted BG (Congress) | 2B2.3 | 1 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 10 | Physical Violence Restricted BG (USCP West Plaza) | 2B2.3 | 2 | 4 (base OL) +2 (restricted building or grounds) =6 | 6 | / | / |
| Count 11 | | Misd. | N/A | N/A | / | / | / |
| Total Units | | | | | | | 5 units |

8

### d. Guidelines Summary & Zero-Point Offender Status

In his original sentencing memo (ECF:113 at 12-13), Mr. Mock asked the Court to consider his zero-point offender status in light of then-recent amendments to the Sentencing Guidelines. *See* U.S.S.G. § 4C1.1 (providing for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria). In light of the fact that Mr. Mock's offense occurred under the singularly unique circumstances of January 6th, he is not likely to recidivate — one of the underlying motivations for § 4C1.1's two-point reduction — and thus respectfully maintains that the same justification suggests a variance here even if the Court does not find that U.S.S.G. § 4C1.1 applies.

| Calculation | Total Offense Level | Guidelines Range | Range -2 w/ 4C1.1 |
|---|---|---|---|
| Without Official Victim | 18 | 27-33 | 21-27 |
| With Official Victim | 24 | 51-63 | 41-51 |
| Using § 2A2.4 | 17 | 24-30 | 18-24 |

### B. Factual Developments

The defense wishes to highlight for the Court's consideration several factual developments since Mr. Mock's February 2024 sentencing hearing, including his continued remorse and rehabilitation. *See Pepper v. United States*, 562 U.S. 476, 481 (2011) ("We hold that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."). Mr. Mock wishes to speak directly to the Court about his rehabilitation. In addition to his words to the Court, the defense notes that Mr. Mock has been an exemplary inmate at Sandstone FCI, where he has a clean disciplinary record, a job in the recreation department since the moment he became eligible to work, and where he has taken

several self-betterment classes.

Significantly, Mr. Mock has also recently received a positive cancer screening, which requires follow-up testing and potential treatment that he would like to undergo — if at all possible — in a private setting instead of through BOP in light of the area of concern (gastrointestinal/colon).

Finally, the defense notes that as of November 6, 2024, Mr. Mock's BOP sentencing computation indicates that he has earned 75 days of First Step Act credits and has a home detention eligibility date of March 25, 2025, and projected release date of July 2, 2025 (with applied FSA credits). While Mr. Mock's home detention eligibility date continues to move closer as Mr. Mock continues to earn First Step Act credits, it is still just an "eligibility date," which does not need to be honored by the BOP. Had Mr. Mock been able to earn First Step Act credit for his pre-sentence incarceration, he would be eligible for release even sooner. In light of his positive cancer screening, as well as his post-sentence rehabilitation, Mr. Mock respectfully requests that the Court sentence him to time served so that he may immediately undergo additional testing and begin any necessary treatment while on release.

## Conclusion

In light of the legal developments that affect the Guidelines range the Court used to anchor its sentencing analysis, as well as Mr. Mock's post-sentencing rehabilitation and positive cancer screening, Mr. Mock respectfully requests that the Court amend his sentence to time served.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
ROSANNA M. TAORMINA
Assistant Federal Public Defender

MICHELLE PETERSON
First Assistant Federal Public Defender
625 Indiana Avenue, NW, Suite 550
Washington, D.C.  20004
(202) 208-7500